UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BARBARA B.,[1] | ) |
| | ) No. 20 CV 547 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security,[2] | ) |
| | ) December 16, 2021 |
| Defendant. | ) |

**MEMORANDUM OPINION and ORDER**

Barbara B. brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her claim for disability insurance benefits ("DIB"). Before the court is Barbara's motion for summary judgment. For the following reasons, the motion is granted:

**Procedural History**

Barbara filed her DIB application in July 2017 alleging a disability onset date of July 30, 2014. (Administrative Record ("A.R.") 61.) After her application was denied initially and upon reconsideration, (id. at 170, 177), Barbara sought and received a hearing before an administrative law judge ("ALJ"), (id. at 180, 223). A hearing took place in May 2019 at which Barbara and a vocational expert ("VE")

---

[1] Pursuant to Internal Operating Procedure 22, the court uses only the first name and last initial of Plaintiff in this opinion to protect her privacy to the extent possible.

[2] Kilolo Kijakazi is currently the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), she is automatically substituted as Defendant in this case.

provided testimony. (Id. at 92-123.) Thereafter, the ALJ issued a decision in August 2019 concluding that Barbara was not disabled. (Id. at 58-71.) When the Appeals Council denied Barbara's request for review, (id. at 1-7), the ALJ's denial of benefits became the final decision of the Commissioner, *see Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Barbara timely filed this lawsuit seeking judicial review of the Commissioner's final decision and the parties consented to this court's jurisdiction, *see* 28 U.S.C. § 636(c); (R. 8).

## The ALJ's Decision

The ALJ followed the required five-step process in evaluating Barbara's disability claim. *See* 20 C.F.R. § 404.5120(a). At step one the ALJ found that Barbara had not engaged in substantial gainful activity since her alleged disability onset date. (A.R. 63.) At step two the ALJ concluded that Barbara suffers from the following severe impairments: degenerative disk disease of the lumbar spine; right elbow tendonitis; and fractures of the left radius and ulna. (Id. at 64.) The ALJ also concluded that Barbara experiences several non-severe physical impairments, including a history of thyroid issues, a history of fractures in the left foot, a previous rotator cuff tear on the left shoulder, and a prior fracture of the right lateral malleolus/tibia. (Id.) The ALJ then considered the severity of Barbara's medically determinable mental impairment of depression, applying the "paragraph B" criteria for evaluating mental functioning. (Id.); *see also* 20 C.F.R. § 404.1520a. The ALJ concluded that Barbara has mild limitations in concentrating, persisting, or maintaining pace ("CPP") and no limitations understanding, remembering, or

2

applying information, interacting with others, or adapting or managing oneself. (A.R. 64-65.) In reaching these conclusions, the ALJ discounted the opinion of Barbara's treating psychiatrist as unpersuasive, finding that it was neither consistent with nor supported by the overall record and that the psychiatrist "did not point to any specific evidence to support these statements." (Id. at 65.)

At step three the ALJ determined that Barbara's impairments do not meet or medically equal any listed impairment. (Id. at 66.) Before turning to step four, the ALJ determined that Barbara has the residual functional capacity ("RFC") to perform sedentary work with the following physical limitations:

> [S]he can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. She can never climb ladders, ropes, or scaffolds. She can operate foot controls with her left foot occasionally and operate hand controls with her left hand frequently. She can occasionally reach overhead, and frequently in all other directions with both the left and right arms. She can handle, finger, and feel frequently with both hands. She can never work at unprotected heights, can occasionally work with moving mechanical parts, occasionally operate a motor vehicle, and occasionally in vibration.

(Id.) In reaching these limits, the ALJ found Barbara's "statements about the intensity, persistence, and limiting effects of . . . her symptoms" to be "inconsistent with the longitudinal record." (Id. at 67.) As part of the review of the longitudinal record, the ALJ made findings regarding Barbara's "diagnosis of tendinitis in [her] right elbow and wrist," (id.), and "a distal radial fracture in [her] left arm in 2014 (1F/48) and then a more recent injury in April 2017 (23F)," (id.). Neither the RFC nor symptom assessment includes any discussion of the mild CPP limitations the ALJ found at step two. (Id. at 66-69.) Based upon this RFC, the ALJ found at step

four that Barbara is unable to perform any past relevant work. (Id. at 69.) At step five, however, the ALJ relied on the VE's testimony in concluding that a significant number of jobs exist in the national economy that Barbara can perform, and therefore found her "not disabled." (Id. at 70-71.)

## Analysis

Barbara argues that the ALJ erred in formulating an RFC that did not accurately reflect her mental impairments and in excluding discussion of the right wrist fracture she suffered in 2014. (R. 19, Pl.'s Br. at 6-7.) In reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and whether the decision has the support of substantial evidence. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Substantial evidence means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). This is a deferential standard that precludes the court from reweighing the evidence or substituting its judgment for that of the ALJ, allowing reversal "only if the record compels a contrary result." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted).

### A. Mental Impairments

Barbara contends that the ALJ failed to properly consider the opinion of her treating psychiatrist, mischaracterized the record evidence regarding her mental health, and failed to formulate an RFC that incorporates her mental limitations. (R. 19, Pl.'s Br. at 8-11.) The crux of Barbara's argument is that the ALJ's

4

consideration of her mental impairments is woefully incomplete. The court agrees with Barbara's primary assessment. Indeed, the ALJ's decision is so rife with error as to significantly hinder judicial review. *See Brian J. v. Saul*, 438 F. Supp. 3d 903, 907 (7th Cir. 2020) ("[T]he ALJ must explain [her] analysis of the evidence with enough detail and clarity to permit meaningful appellate review.") (internal quotation marks omitted). Remand is necessary to correct these errors.

An apparent reversible error in this case is the complete absence of any discussion of Barbara's mental impairments and resulting limitations in the RFC analysis and subjective symptom assessment. The Seventh Circuit has made clear that "[w]hen determining a claimant's residual capacity to work, the ALJ must consider in combination all limitations on the claimant's ability to work, including those that are not individually severe." *Krug v. Saul*, 846 Fed. Appx. 403, 406 (7th Cir. 2021). "A failure to fully consider the impact of non-severe impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010). This rule applies even to mild limitations in mental functioning: "Although a mild limitation in an area of mental functioning does not necessarily prevent an individual from securing gainful employment, the ALJ must still affirmatively evaluate the effect of that limitation on the claimant's RFC." *Judy D. v. Saul*, No. 17 CV 8994, 2019 WL 3805592, at *4 (N.D. Ill. Aug. 13, 2019) (internal citation and quotation marks omitted).

Here, the ALJ found that Barbara suffers from mild CPP limitations, (A.R. 64-65), acknowledged that the RFC used at steps four and five would require

5

"a more detailed assessment" of those limitations, (id. at 65 (citing SSR 96-8p, 1996 WL 374184 (July 2, 1996)), and previewed that the subsequent RFC would "reflect[ ] the degree of limitation . . . found," (id.). The ALJ never delivered on these promises, however, and instead formulated an RFC that lacks any mental health restrictions and failed to explain why limitations were not warranted. *See Judy D.*, 2019 WL 3805592, at *4 ("If the ALJ believed that [claimant]'s mild limitation in CPP did not merit a non-exertional limitation in the RFC, [she] was obligated to explain that conclusion so that we can follow the basis of [her] reasoning."). The ALJ therefore failed in her duty "to fully consider the impact of non-severe impairments," *Denton*, 596 F.3d at 423, and "failed to build the requisite accurate and logical bridge from the evidence concerning [Barbara]'s mental impairments to her selected RFC, which omitted mental health restrictions," *Lawonda P. v. Kijakazi*, No. 20 CV 2573, 2021 WL 3418847, at *3 (N.D. Ill. Aug. 5, 2021). As a result, the ALJ's RFC is not supported by substantial evidence.

The ALJ also failed to include any discussion of Barbara's mental impairments and resulting symptoms in the subjective symptom assessment. An ALJ's symptom evaluation is entitled to great deference because of the ALJ's ability to observe firsthand the believability of the claimant's symptom descriptions. *See Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014). As such, a reviewing court may reverse a symptom assessment only where it is "patently wrong." *Id.* at 816. The court will not disturb an ALJ's evaluation of a claimant's symptom description if it is logically based on specific findings and evidence in the record. *See id.* at 815.

6

However, an ALJ's "failure to adequately explain his or her credibility finding . . . is grounds for reversal." *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015).

Here, Barbara offered testimony and reports discussing her mental symptoms. These symptom reports emphasize difficulties with concentration and memory as a result of depression and anxiety. (See A.R. 102-04 (testimony describing drowsiness and crying as depression symptoms), 344-48 (12/06/17 Function Report ascribing to depression and anxiety need for reminders and difficulty dealing with stress, handling money, following instructions, enjoying hobbies, and concentrating), 378, 383-84 (12/14/17 Disability Report describing forgetfulness and worsening depression), 398-402 (06/18/18 Function Report discussing symptoms associated with depression and anxiety), 425-26 (11/05/18 Disability Report describing difficulty concentrating and worsening depression, forgetfulness, and memory).) The ALJ never considered or evaluated these symptom allegations, (id. at 66-69), essentially rejecting such evidence. Summary dismissal amounts to a clear "failure to adequately explain [the] credibility finding," *Minnick*, 775 F.3d at 937, thereby rendering the symptom assessment "patently wrong" and not supported by substantial evidence, *Murphy*, 759 F.3d at 816.

The ALJ's evaluation of the mental opinion evidence of record is also problematic. Turning to the ALJ's evaluation of treating psychiatrist Dr. Aqeel Khan's opinion, the government's framing of the relevant law is correct. (See R. 22, Govt.'s Resp. at 3-4.) For claims such as this one filed after March 27, 2017, the old "treating physician rule" has been replaced and the opinion of a treating physician

is no longer entitled to presumptive controlling weight. *See* 20 C.F.R. § 404.1520c(a). Instead, the regulations now direct ALJs to "articulate how [they] considered the medical opinions or prior administrative medical findings from [each] medical source together in a single analysis using the factors listed in" the regulation. *Id.* § 404.1520c(b)(1). Consistency and supportability "are the most important factors" in determining how persuasive an ALJ finds a medical source's opinions, and "[t]herefore [the ALJ] will explain how [she] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings." *Id.* § 404.1520c(b)(2). The ALJ may consider the other factors (such as the treating relationship or the provider's specialization) but is not required to do so. *Id.*

Although the government correctly notes that "the ALJ explicitly discussed supportability and consistency," (R. 22, Govt.'s Resp. at 4), Barbara does not argue that the ALJ failed to consider the required regulatory factors. Rather, she contends that the ALJ mischaracterized the record when considering those factors and failed to take into account important evidence in the record. (See R. 19, Pl.'s Br. at 8-9.) The court agrees. The ALJ concluded that Dr. Khan's opinions that Barbara "would have poor ability to maintain attention and maintain socially appropriate behavior" were "not consistent" because Dr. Khan "did not point to any specific evidence to support these statements." (A.R. 65.) But as Barbara points out, Dr. Khan specifically cited Barbara's history of "depression, anxiety, flashbacks, [and] conc[entration] problems" in support of his conclusions. (Id. at

8

439, 627; see also R. 19, Pl.'s Br. at 8.) Regardless, the medical record documents anxiety and depression diagnoses far more frequently than would be reasonable to cite here, (see, e.g., A.R. 564, 634, 638, 659, 956, 1107), and the ALJ omits any mention of this evidence. While an ALJ need not consider every piece of evidence, *see Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013), she cannot ignore an entire line of evidence, *Stephens v. Berryhill*, 888 F.3d 323, 329 (7th Cir. 2018) ("The ALJ may not select and discuss only that evidence that favors her ultimate conclusion, but must confront the evidence that does not support her conclusion and explain why it was rejected."). The failure to account for this evidence means that the ALJ's evaluation of Dr. Khan's opinion is not supported by substantial evidence.

As for supportability, the ALJ concluded that Dr. Khan's opinions were "not supported by the overall record" because "[e]vidence shows that [Barbara] generally was friendly and cooperative, and only occasionally displayed an impaired attention span." (A.R. 65.) Barbara argues that in reaching this conclusion, the ALJ failed to consider evidence from Dr. Khan's treatment of Barbara. (R. 19, Pl.'s Br. at 9.) However, the ALJ did consider Dr. Khan's treatment records along with other evidence from the record in finding that "[Barbara] sometimes had a normal attention span [at exams], but at other exams, she displayed an impaired attention span." (A.R. 65 (citing id. at 636, 640-41, 970).) This court cannot reweigh evidence, *see Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008), and the ALJ's acknowledgement of mixed medical evidence regarding Barbara's attention span

9

gives the court no reason to believe the ALJ wrongfully cherry-picked evidence, *see Pepper*, 712 F.3d at 362; *Stephens*, 888 F.3d at 329.

Nevertheless, the ALJ's decision runs into problems because the ALJ cites the mixed record of Barbara's attention span issue to discredit Dr. Khan on the one hand and to justify finding a mild CPP limitation on the other. (See A.R. 65.) This inconsistency gives the court pause because if the ALJ can look at this mixed record and conclude that Barbara's attention span is sufficiently impaired to cause limitations in her mental functioning, it is unclear to the court why a licensed psychiatrist in a treatment relationship with Barbara should be disqualified for concluding the same. As such, the supportability analysis of Dr. Khan's opinion fails to build the required "accurate and logical bridge" between the record and the ALJ's conclusions. *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020). Although the court need not decide now whether this issue would independently rob the ALJ's decision of the required support of substantial evidence, the reevaluation the ALJ must conduct on remand provides an opportunity to clarify this reasoning.

Finally, the ALJ's assessment of the "paragraph B" criteria ignores large portions of the record. Although the applicable regulations require the ALJ to consider "all relevant evidence to obtain a longitudinal picture of [the claimant's] overall degree of functional limitation . . . [including] the effects of [claimant's] symptoms," 20 C.F.R. § 404.1520a(c)(1), the ALJ omitted any discussion or analysis of Barbara's testimony or the various function reports in the record—all of which include descriptions of Barbara's mental health symptoms. (Compare A.R. 64-65

10

with id. at 102-04, 340-52, 363-72, 377-85, 395-408, 420-27.) Similarly, in considering the functional area of "adapting or managing oneself," the ALJ found that Barbara has no limitations because she "has not sought counseling or other specialized treatment for her depression." (Id. at 65.) This statement is also inaccurate. Barbara sought treatment from Dr. Khan, had four visits with him in August and September 2017, and met with a therapist under his supervision in September 2017. (Id. at 631-43.) Barbara testified that she stopped seeing Dr. Khan because he was too far away, but that he prescribed an antidepressant that could be continued by her primary physician. (Id. at 114.) The medical record consistently shows Barbara taking duloxetine for depression from this point forward, in addition to diazepam to treat anxiety and back pain. (See id. at 730-55, 817-906, 911-36, 954-73, 1056-1164.) By failing to grapple with any of this evidence of Barbara's symptoms or specialized treatment, the ALJ impermissibly ignored large portions of the record. *See Stephens*, 888 F.3d at 329. For these reasons, the court finds that the ALJ's assessment of the "paragraph B" criteria at step two is not supported by substantial evidence.

On remand the ALJ must re-evaluate Dr. Khan's opinions, examining their supportability and consistency in light of the full medical record as to Barbara's mental impairments. The ALJ must then reassess the severity of Barbara's mental limitations, considering Barbara's symptoms and treatment history. Regardless of whether the ALJ finds Barbara's mental limitations to be severe, the ALJ must

consider corresponding symptoms in the subjective symptom assessment and incorporate the assessed limitations in the RFC.

**B.     Wrist Fracture**

Barbara argues that the ALJ erred when formulating the RFC by not recognizing that Barbara fractured her right wrist (her dominant hand) in 2014, (R. 19, Pl.'s Br. at 11-12), and that there was evidence of reduced range of motion in her right wrist prior to May 2018, (id. at 12 (citing A.R. 435-37, 619, 659, 664, 670, 739, 844)). The government does not dispute that the ALJ mistakenly thought Barbara fractured her left wrist in July 2014 rather than her right. (See R. 22, Govt.'s Br. at 8.) Instead, the government argues that the ALJ's mistake stems from underlying medical reports that erroneously identify Barbara's left wrist as the location of the 2014 fracture and that "[t]he ALJ should not be faulted for considering the numerous medical reports at face value." (Id. (citing A.R. 511-14, 522, 524-25, 531-32).) But the medical records, Barbara's own testimony, and Barbara's attorney all identify her right wrist as suffering a fracture in 2014. (See, e.g., A.R. 111, 130, 152, 475, 515, 617, 776, 930.) By not grappling with any of this contradictory evidence suggesting that Barbara had fractured her right wrist in 2014, not left, the ALJ ignored an entire line of evidence. *See Stephens*, 888 F.3d at 329; *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (ALJs have "a basic obligation to develop a full and fair record" and "remand may be required . . . if the ALJ based the decision on serious factual mistakes or omissions").

The government argues that any such error was harmless, as was the ALJ's failure to acknowledge that Barbara's treaters documented reduced range of motion in her right wrist before May 2018. (R. 22, Govt.'s Resp. at 8.) These misstatements of the record should not disturb the ALJ's decision, according to the government, because the ALJ considered and discussed "other abnormal findings" regarding Barbara's right arm, included restrictions on right-arm use when formulating the RFC, and supported these RFC restrictions with a subjective symptom assessment that considered the longitudinal medical record. (Id. at 9-11.) In other words, the government asks the court to affirm the ALJ's decision because the ALJ's "findings and inferences reasonably drawn from the record are supported by substantial evidence, even though some evidence may also support [Barbara's] claim." (Id. at 11 (citing 42 U.S.C. § 405(g)).) Finally, the government contends that even if the court disagrees with those arguments, Barbara has not met her burden of demonstrating "that she was more limited than already found by the ALJ." (Id. at 10.)

Barbara has the stronger position here. Turning first to the symptom assessment, the court may reverse only where the symptom assessment is "patently wrong." *Murphy*, 759 F.3d at 816. The government acknowledges that the ALJ failed to consider both the 2014 right-wrist fracture and evidence the right wrist had reduced range of motion prior to May 2018. (R. 22, Govt.'s Resp. at 8.) When combined, these errors mischaracterize the record such that the ALJ's subjective symptom assessment as to Barbara's right wrist is patently wrong. Such error is

13

harmless if the court "can predict with great confidence" that the ALJ will reach the same result on remand. *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). Here, the court cannot reach such a conclusion. Barbara argues that the 2014 right-wrist fracture is the key fact explaining all the other evidence regarding the severity of symptoms she experiences with her right arm. (See R. 19, Pl.'s Br. at 13 ("The pain emanating from Plaintiff's dominant right wrist does not make sense until one realizes that the wrist was broken in 2014 and the longitudinal record includes a steady stream of examinations showing that the right wrist was painful and had a reduced range of motion.").) This court cannot confidently say, therefore, that the ALJ would reach the same conclusions on remand regarding Barbara's complaints of right-wrist pain if her 2014 fracture and pre-2018 history of reduced range of motion were properly considered in the longitudinal record. (See A.R. 67.)

Furthermore, the government is mistaken when it argues that Barbara failed to identify additional limitations not already present in the RFC. The Seventh Circuit has made clear that error in an ALJ's RFC assessment is harmless unless the claimant can identify additional record-supported limitations not captured by the ALJ's formulation. *See Gedatus v. Saul*, 994 F.3d 893, 905 (7th Cir. 2021). Barbara argues that if the ALJ had correctly evaluated the record regarding her right-wrist pain, the ALJ would have credited her testimony that she could not finger or grasp objects for more than two or three hours out of eight. (See R. 19, Pl.'s Br. at 14-15; A.R. 113.) According to Plaintiff, such a finding would require the ALJ to change the RFC's "handle, finger, and feel" limitation from "frequently" to

14

"occasionally," (R. 19, Pl.'s Br. at 14-15; A.R. 66), which the VE's testimony suggests may preclude employment, (see A.R. 120). Although this court cannot say whether the ALJ will conclude Barbara can "handle, finger, and feel" only occasionally on remand, Barbara nevertheless has identified an additional record-supported limitation not presently included in the RFC that could alter the outcome of the case. That is more than enough to satisfy the Seventh Circuit's harmless error analysis. *See Gedatus*, 994 F.3d at 905. As such, remand is warranted so that the ALJ may consider what impact, if any, evidence of Barbara's 2014 right-wrist fracture and subsequent limited range of motion has on the subjective symptom assessment and RFC.

## Conclusion

For the foregoing reasons, Barbara's motion for summary judgment is granted, and the case is remanded for further proceedings consistent with this opinion.

        **ENTER:**

        _____
        **Young B. Kim**
        **United States Magistrate Judge**